Next case on the docket is 5-13-416 People v. Grant. Counselor, ready to proceed? Good morning, Your Honor. Good morning. Court is lifted for the appellant, James Grant. Speak up because it is being recorded. May I please report, Mr. Counsel? This appeal involves a jury trial in Johnson County, Illinois on a recovery petition under the Sexually Dangerous Persons Act. Mr. Grant was committed under that act approximately 15 years ago. He admitted that petition. Since that time, he has been held at Big Muddy Correctional Center and has been participating in the Sexually Dangerous Persons Program, albeit at probably reduced levels. His last petition was filed in 2012. Excuse me, the program is voluntary, is that what you're saying? It is voluntary. And you're kind of admitting that he wasn't very active in it? That's what the evidence showed, Your Honor. I think that he, based upon his progress reports, he was at an introductory level, is what the evidence was, after being in 15 years. During our pre-trial stage, there were some pre-trial motions filed. The state filed a pre-trial motion to have an independent expert appointed for them to examine Mr. Grant. This succeeded two previous motions made by the defendant to have an independent examiner appointed to him. Following my objection to that motion, as well as a third request for an independent examination, the trial court granted the state's motion and appointed Dr. Angeline Stanislaus to examine the defendant. In that order, it says that the defendant shall submit to an examination by Dr. Stanislaus. Subsequently, there was another pre-trial motion filed by Mr. Grant. It was a motion in limine. And that addressed an issue, too, of the appellant's brief. And that sought to have excluded certain evidence. And that evidence all regarded the issues that occurred back in the 1990s, essentially the underlying offenses for which he was committed to the Department of Corrections, as well as sentenced on felony offenses. The third issue of our brief involves whether or not the court has the sui squante obligation to instruct the jury on the verdict of proof, clear and convincing in this case. The fourth issue involves whether certain jury instructions that were tended by the defendant should have been given to the jury. Regarding the first issue, the statute involved, this is a civil issue, but because it involves liberty, right, or liberty of interest to the defendant, the court has previously determined that the statute should be strictly strict. Now, that statement has been used by previous appellate courts numerous times when a defendant has requested an independent examination. They've used that statement to deny a defendant's request. They say, well, there's nothing in the statute that grants a defendant the right to an independent examination, so we're not going to read that into the statute. But the independent part of it is that he would have to pay for it. Actually... The court was not disallowing him to get an examination. At state expense. It would have to be at his own expense, correct? Correct, Your Honor. So the only way that a defendant can get it at state expense is if the defendant can prove bias or prejudice on the part of the examining team. But because the statute didn't provide for that, they weren't going to read that into it. So when we look at this case, the state's made a request for an independent examination, but just as with the defendant's case, there's nothing in that statute that allows for a state to have an independent examination at the state's expense. Of course, that's going to be funded by either fines, fees, tax dollars, however it's funded. The money just doesn't appear. But that's the first reason why we think that the trial court area... Some of the other cases talk about an unfair advantage where the state can't just pile on experts that agree with their side. But in this case, the examination that was provided to Mr. Grant basically said that he should be released. That's correct, Your Honor. And now we've got this issue to where this Sexually Advantaged Persons Act, the recovery portion of it, authorizes and mandates that the Department of Corrections appoint and prepare this socio-psychiatric evaluation by appointed experts for them. And those experts come back and recommend release. Well, the state doesn't like that, so they go get their own expert, and now he's being held, despite the fact that the statute's basically been met. And about piling it on, in this case especially, but there is another case, I believe it's Finkel, that's cited in the brief. And they say basically a defendant doesn't necessarily always need a... because the experts appointed by the state are inherently trustworthy. They're in the best position to know what's going on with the respondent's or the defendant's treatment. So that has inherent trustworthiness in that evaluation. So now we've gotten to this position where the state, where it was arguing that that was the case in Finkel, now they've kind of backtracked on itself and said, well, no, that's not always the case. We don't like that report now, so we want our own report. All the arguments used by the state to get this report, too. It unfairly ties the state's attorney's hands to go with whatever expert the Department of Corrections uses. The fact that the evaluator's decision recommends discharge. The state felt another psychiatrist may look at the static 99R for another test differently. That's all been used by the defendant before. And that's never been a basis for a defendant's independent examiner being appointed. The second issue regarding the appointment of Dr. Stanislaus I think is even more important. And the state doesn't even really respond to it in that brief. Is that this violated the defendant's right against self-discrimination. That order said he shall submit to the examination. Section 9 expressly recognizes the defendant's right not to participate in a recovery evaluation. It says he doesn't have to. If he doesn't, they can use previous reports. He can't present any expert on his behalf. If he doesn't, then they can't, but they can use reports. Right, they can use previous reports. Right. And I think the exact language is if the applicant refuses to speak to, communicate with, or otherwise fails to cooperate with the state's examiner, the applicant may only introduce evidence and testimony from any expert or professional person who is retained to conduct an examination based upon review of the records and may not introduce evidence resulting from an examination of the person. So he doesn't have to participate. But I guess he chose to, but you're still saying he chose to that one time and he doesn't have an obligation. He chose to in this case. Yes, he was examined by the DOC evaluators. I don't think he had a choice. You're saying that because the court ordered him, the order was in violation of the statute. Well, if he would have chosen not to participate in the examination, then I think the result would have been he could have been subjected to the court's contempt power, whatever that may have been. But he violated it. If he would have chosen not to participate, the order said he shall submit to the examination. He says, no, I'm not going to talk to you, Doctor. Then, of course, the state's going to come in and tell the court he's not participating. And then what's the result from there? I don't know. But I think he may well have been in violation of the court order. So the court order requires him to participate in the evaluation. He's giving information to the examiner, and the examiner is going to put it in her report and then testify to that. So, essentially, he's providing testimonial evidence against himself, and it's being presented to the jury. And I don't think that's any different from any other run-of-the-mill criminal case when a defendant talks to a police officer in violation of Miranda or, you know, is beaten with a phone. And then that evidence is presented to the jury. And there's cases that clearly say that a defendant cannot be called as an adverse witness. So they recognize the right of the defendant not to incriminate himself in sexually dangerous persons proceedings. The second issue is the defendant's second motion in limiting files, July 12, 2013. The standard case that's cited in our brief expressly says the defendant must be tried on his current mental condition. In this case, the defendant admitted, approximately 15 years ago, the state's petition to have him declared as a sexually dangerous person. So whether or not he was a sexually dangerous person was not an issue in this case. So the state did not have to prove that he was a sexually dangerous person anymore. That wasn't an issue. The state had to prove whether or not he was, at this point in time, a sexually dangerous person. What was his mental condition now? Is he likely to repent? So the evidence of the victim testifying as to what happened the night with Mr. Crink entering the house, or the struggle in leaving, that was not relevant. And the victim testified. She hadn't had any contact with him in 15 years. She had no idea what his current mental condition was. So it wasn't relevant to the incident proceedings, which was a recovery proceeding. The same way with the incident at Buncombe Grade School. That was not relevant to whether or not he was a sexually dangerous person at this point in time. What his mental condition is now. And what's particularly frustrating about the Buncombe Grade School incident was there was no arrest. There were no charges filed. No formal proceedings whatsoever. And the Beshears case, Fifth District Appellate Court, stated there were no certified copies of any conviction. Any convictions, any records of any convictions were not introduced into evidence. There's no testimony that Beshears was ever convicted of any crime. The only evidence concerning the aspect of the case is the testimony of the policeman from the East St. Louis Police Department that he had been arrested on two prior occasions for offenses similar to that involved in the incident case in Beshears. And in overturning the trial court, the appellate court said this evidence is not competent because evidence of arrest is not even competent to prove commissions of crime. So that involved actual arrests. There weren't even arrests in the Buncombe Grade School case. What about the DCFS finding? What ever became of that? There was an indicated finding, as I recall. Yes, Your Honor. Was there ever a charge or anything? No, Your Honor. But that information came in as well. Well, there was no direct testimony of it. The experts testified to it. Okay. Which actually takes me to another point while we're there. One of the State's arguments as to why this is relevant is because the experts relied on it. And I don't think that that's the standard of what relevant evidence is. I think that experts can rely on inadmissible evidence, and I think they can even testify to inadmissible evidence. But just because the experts rely on it doesn't make it relevant. And I think the State says that twice in their reply brief, both the victim's testimony and the Buncombe testimony, is that, well, the experts relied on it, so that makes it inadmissible. And I don't think that's the standard at all. But, Your Honor, there were no formal adjudications, arrests, dispositions, or anything criminal regarding the Buncombe incident. But I do believe that the rules of evidence allow an expert to testify to inadmissible evidence, and we're going to use that as a basis of our opinion. Regarding the testimony of Sheriff Faulkner and Deputy Jordan in the playing of the video, that had no relevance whatsoever to the issue of what Mr. Grant's current criminal conviction was. It all established what happened back then, but there were certified copies of convictions that could have been introduced, and I think were introduced, and the defendant admitted to the petition back in the 90s. So that was not an issue, so it didn't need to be proved. All it did was inflame the jury against Mr. Grant. There's no doubt about it. When they hear that evidence, they're not going to release it, despite what any report says by any psychiatrist appointed by the Department of Corrections. The state in their reply brief, and I was reviewing that to see what they would say about the relevance of the evidence, and I believe that it just includes two conclusory statements about it. It says it was relevant and it was necessary. It doesn't explain how it was relevant. How does the testimony of Sheriff Faulkner prove what the status of Mr. Grant is today? And it doesn't. Regarding the third issue, I know that there is a Fifth District Appellate Court case regarding that issue. A defendant in these proceedings can be held in perpetuity. I would just ask that the court review that. I'm not going to dwell on it or address it any further. The fourth issue, though, I believe stems from the evidence that was introduced. If defendant's motion in limine was granted, the second motion in limine, then the fourth issue would be a non-issue. It would be moved. But because they brought all that evidence in, then the fourth issue comes into play. Because the Sexually Dangerous Persons Act contains all these words and phrases that we attempted to define in our jury introduction in 6-12. And the reason why we had to define them is because of the evidence that was presented, the evidence of what the victim, the bunking school, and what Sheriff Faulkner had to do to Jordan. Had that not been introduced, then I don't think that we would have ever sought to have those jury instructions presented because it wouldn't have been an issue at that point in time. The jury wouldn't even need to know about that. The... And what makes the jury instructions even more important are the facts that the experts even had a difference of opinion on what a sex offense was. Dr. Stanislaus viewed certain conduct as a sex offense. Dr. Clownish and Dr. Rao viewed certain conduct as not being a sex offense. So if the experts can't even agree, then I think the jury needn't be instructed on what the law says certain sex offenses are, certain sexual conduct is, whether or not some conduct is, some conduct isn't, and that was not presented to them. But they heard all the facts about what happened back in the 1990s with no guidance whatsoever on what actually was the standard or what the law was. And for those reasons, I really think that, as the court said, maybe not directly in relation to this case, but it was heaped on Mr. Grants here. He had the sex offended persons recovery section 9, that section of the act, that was satisfied under black and white the letter of the law. He applied. The Department of Corrections directed a socio-psychiatric evaluation that was prepared, a recommended release. Mr. Reddick, we've talked about the recommended release, but the testimony at the hearing by, I think it was Dr. Rao, even though he recommended release, didn't he also say that he could not predict whether defendant would re-offend if released? Yes, Your Honor. If, and I don't think anybody could ever predict that. But if the conditions that are such that they, if the conditions of the defendant are such that they can't predict it, then that can be put on the supervisor, please. It was a conditional release that was recommended, wasn't it? I believe so. But because of that, we think the statute is satisfied. We think that the court improperly read the appointment of Dr. Stanislaus into that statute during the state examination. We think the court abused its discretion in allowing the evidence in that's not relevant to Mr. Reed's current condition. And we think it was error, plain error, not to instruct the jury on the standard of proof, and as well as failing to tender those jury instructions based upon the evidence that was presented. And for those reasons, we'd ask that this call be remanded for a new trial, consistent with the court's order as a break point. Thank you. Thank you, counsel. Good morning. May I please report? Good morning. My name is Perry Miller, and I'm here on behalf of the State's Attorney Appellate Prosecutor's Office representing the state in this matter. The state's position on issue one, that the court did not err in granting the state's motion for appointment of independent psychiatrist to examine respondent. The state's position is that although the respondent is not entitled to have an independent psychiatrist appointed, that the state's role was different. The state filed an objection to the respondent's motion to have an expert appointed by the court. The state's position was that the state should be allowed to have an expert appointed. That was because the state has the burden of proof by clear and convincing evidence that the applicant was still sexually dangerous. The state also maintained that it was unfair to require the state to accept an expert used by the Department of Correction that had a different purpose and goals. The state pointed out in its motion that the respondent's evaluation showed that he had not recovered and participated in treatment that was meaningful and in a meaningful manner. Also, the report by Rexford did not address what the court defendant had done to reduce his danger to the public. And based upon this report, because the respondent had not completed treatment, that was another factor why the state requested that it be allowed to have the respondent examined by an independent psychiatrist. Also, the state noted for the court that under the Minnesota test static 99, which shows that the defendant was a low risk, that another expert may have received that and viewed it differently. Also, within the report that was recommending that the respondent had recovered, it was noted by the state that a previous diagnosis for a pedophile in 1992, based upon an indicated report from DCFS, was likely. So for those reasons, the state requested to have an independent expert. The respondent was not denied the right to have one, but he requested to have one at the expense of the government. And the trial court asked the respondent specifically if he was willing to pay, and the respondent's position was more of, it was unfair because the state had funds to pay for an expert. Therefore, the respondent should be given. The respondent, in his motion, never alleged bias or prejudice, which are the factors that the court considered if you were going to have an independent expert appointed. Therefore, it's the state's position that nothing in the act or no case law prohibited the court from appointing and allowing the state to have an independent psychiatrist. When you look at the purpose of this act, the purpose of the Sexually Dangerous Person Act is one, to ensure the safety of the public. Two, is to help the respondent to get recovered. The state has the responsibility- And the DOC does not have the same purpose or goal. The DOC is appointed as a guardian for the respondent when he's in there. And DOC has the responsibility of, once an application for recovery is filed, to have the sociopsychiatric report that is presented to the court. And what is the purpose of that, the sociopsychiatric evaluation? That is for the court to be able to consider in the application of the respondent. It would include the past history, relevant evidence that the court would need in determining whether the respondent has or still remains a sexually dangerous person. Isn't that a similar goal to what the state has? Yes, but the state has the responsibility of assuring that if the respondent has not recovered, the state has the responsibility and the burden of proof to prove that the respondent remains a sexually dangerous person. And the report, just having a report filed, that is not necessarily the state's answer or response to the application for recovery by the respondent. It's the state's position that the court did not improperly grant the state's motion to have an independent psychiatrist in light of the facts of this case and also the current law. As far as the argument that the court improperly had the respondent to submit to an examination by the state's expert, the state acknowledges that there is a provision, but that the provision within the act where the defendant, respondent, refuses to be evaluated, that the court did not violate the act. You have to look at the overall purpose of the act, and it was not self-incrimination in that respondent had to be interviewed, and that evidence also has to be considered by the court, whether it's the psychiatrist that originally was appointed or used by D.C. Department of Correction, where you have the psychiatrist, the social worker, under the supervision of the psychiatrist and the psychologist making the statement. And the state would maintain that it was not being prejudicial or would require reversal for the respondent to have to submit to an examination since it is being considered for his recovery. And the state has the responsibility of establishing or assuring that the respondent is not still sexually dangerous before he is released or she into society. I don't understand your argument in that regard. The statute very clearly says that he doesn't have to participate. And is your argument that he does when he's ordered, that the statute doesn't say what it says? The state's position is that the order of the trial court in this circumstance, that it was not self-incrimination that defendants' rights were violated when you have the report that was submitted to the court, and the state pointed out problems with the report that did not address and completely address the issue of respondent's recovery and was also lacking information. And to have the respondent submit to another examination by an independent psychiatrist was not in violation of the Sexually Dangerous Person Act. Why not? I still don't think that you answered the question. Why not? The state maintains that it was not a violation because that is under the Sexually Dangerous Act. The state has the responsibility of proving. Respondent is seeking his release, and the doctor interviewing the respondent, this information is given to the court before and in a report with the respondent, which would be the same as respondent when he was interviewed with Westbrook. So you're saying because he voluntarily agreed to be interviewed before, then the court has the right to order him to be interviewed on behalf of the state. Is that your argument? No. In this case, the state maintains that there would be no prejudice to the respondent in that the respondent had to submit to the court. Your argument would be that it incriminated him because he offered up himself to be examined by psychiatrists who now say that, yes, he should be detained, continue to be detained, and came up with the opposite conclusion that the team did. Yes, the state did. The psychiatrists did come up with an opposite conclusion. But at the same time, the court's overall objective is to look and to see if the respondent remains sexually dangerous. And if this court finds that under that provision that the defendant did, that the court violated the respondent's right by self-incrimination, the state would still maintain that reversal would not be required because the evidence clearly showed that the respondent was still sexually dangerous. What evidence? You're saying that we should still consider the evidence even if it was in violation of his rights? There was evidence. There was a whole history of things that the respondent had committed, different sexual acts that showed that he was sexually dangerous, dating back to earlier. Currently, currently. The issue is currently. If it were the fact that he had done some things that made him sexually dangerous 10 years ago, then there would never be a reason for a recovery hearing because the deed would have been done and you're saying that he could never be reconsidered essentially. No, the state's position is that currently he still remains sexually dangerous. I know that's the state's position, but if we were to not consider the second examination, your position still is that there was current information that would have kept him in the DOC, correct? Part of the evaluation process is considering a respondent's past history, but then also showing that the respondent has not recovered. And if you look at the respondent's action, he was committed back in 2002, and during that time he still remained at the orientation state. He did not participate in sexual offender treatment. He also did not believe that he was a sexual offender. And one of the clinical social worker, Dale Spitzler, specifically pointed out that one thing that was very important in evaluating whether a person would reoffend is to have a relapse prevention plan in place. That could never be put in place because the respondent never admitted that he was a sex offender. So he never made it past the orientation stage, which there were four stages. Also, the doctor for the state identified different high-risk factors, and that's that respondent met all ten of them. No, wait, you're talking about the state's examination. I was supposing that the second examination never took place, and I do agree that there was substantial evidence that he never really did much at all to address what his problems were, but do you believe that the judge could just discard essentially the opinion of the three DOC evaluators that said that he should be released and decide that he should stay incarcerated? Is that your opinion? That the judge could just- Disregard their opinion that he should be conditionally released. I don't believe the court, the judge disregarded their opinion. I'm saying if he did not allow the second examination. You were saying that there still was evidence that he could consider that would permit him to decide that he should still be incarcerated. Yes. And you believe that he could basically cherry-pick or take parts of the evaluation and disregard the conclusion that the three individuals came up with that said he should be released? Well, the court did not disregard those conclusions. The court heard the evidence that was presented and found- that the evidence established that the applicant remained a sexually dangerous person. What effect on the jury do you think there was by placing the crying victim on the witness stand from years past? How does that crying victim relate to the present? It seemed to me that the state put on quite a bit of evidence from the past when the issue was today. The state did put on evidence from the past, but it was to establish and give the jury an understanding of the respondent's past history. Also, there were factors that the state's expert pointed out that were clinically important in evaluating whether the respondent remained sexually dangerous. That is, for instance, the Heather Herman case. There was no conviction in that case or charge. The respondent ended up pleading guilty to residential murder. So in terms of what the facts were, if you just put a conviction, there would be no conviction or explanation to the jury about that. And that, the state's expert found, was significant because it showed that the respondent had a propensity to commit violent acts. Actually, the state expert pointed out where the respondent's behavior was escalating. At first, he was entering homes and he was just removing different female garments. But then in the Heather Herman case, he actually went in and when he arrived at her residence, was sitting on the bed, had a ski mask, had a rope, and he admitted that he did not deny that he went in with the intent to have some type of sexual relations with her. So that information was not going to be revealed because he was not convicted. He did not have a conviction in that case. And also... Why wouldn't a simple explanation by one of the sheriff's deputies have been sufficient? Or in that instance, we had a crying witness, we had sheriff's deputies, and we had the video played. I mean, it was like you were reproving your case all over again from years past. And I understand your argument about context, but it seems a little over the top to put all of that in. Well, the state maintains that it was not prejudicial and that there were factors that was disclosed. Just for example, the DCFS incident that was testified to, again, this was something that was clinically significant. But because it was never charged, but the respondent was never convicted, it was not something that any evaluated risk factors would have been considered. But the respondent, after that incident, he was referred to counseling, and he was diagnosed as a pedophile. And then he, even in the Westford report, it showed that counseling that he really didn't receive, I guess counseling that he did not make any difference as far as his treatment. And in the end, the application that the respondent is filing is requested to be released, and the expert for the state, after evaluating all the evidence, maintained that there were no conditions that the respondent could be released safely to the public because he had not even addressed the dangers. Thank you, counsel. Thank you. Rebuttal. State has made arguments as to why they should be entitled. Mr. Grant has not completed treatment. He's not participated in treatment. He's not shown that he's reduced his risk. Those are not the only things that would allow him to be released in the Sexually Advanced Persons Act. If it's advanced age, if it's physical infirmities, if it's a potential mental disorder that he can't go about his daily life, a physical disorder, those would all be reasons why he could no longer be deemed a sexually dangerous person. If he can't act on his impulses, then he can be released. So those things alone are not determinative. That's why the expert testified that as they increase in age, the risk goes down, and that tends to prove that as they get older, they're not going to act on their sexual impulses. The state said another reason why it requested an independent expert is because there was a previous diagnosis of pedophilia that was lacking in the report. There's been four or five different diagnoses by four or five different doctors in this case. I think Dr. Stanislaus herself has made at least two different diagnoses on her three reports. So that should not be a reason why an independent expert should be appointed to the state. The state's repeated again, nothing in the act prohibited the appointment of an independent examiner. Nothing allows it either. If it's not allowed in the statute, the statute should be stricter than it's true. If the statute doesn't allow for it, it shouldn't be granted. What the trial court has done is it's nullified that statutory process. It's basically said, well, the procedure that the legislator set forth is wrong, inactive for this case. We're going to have our own procedure. The state argued that there was no prejudice to the defendant by compelling him to submit to the second examination. I think the court addressed that. And I would echo what the court said. It changed the result. There was a second report with a completely different conclusion. I think that's pretty substantial prejudice to Mr. Grant. The court inquired as to why it wanted to put the prime witness on the stand. And I think the state hit the nail on the head with that one when it said that it wanted to get the past history of Mr. Grant in front of the jury. And I think that's the only reason it did that. The state once again says that it found, or it believed that the evidence was relevant because the experts relied on it. In this DCFS case, I think there's a perfect example of how this should have played out. The DCFS evidence was not admissible. It was all hearsay. There was no direct testimony about it. There were no certified copies of any records introduced. But the experts relied on it. So I think it was admissible in that expert's discussion of how they reached a conclusion. And that should have been the case with the testimony of Heather Pierman, Sonny Warren, Sheriff Faulkner, Deputy Jordan, as well as the video. And I think that's what should have been done in this case. And in my prayer earlier, I asked for remand for a new trial. I reviewed that prayer when the state was presenting its case. And I would ask also an alternative, that this court order Mr. Grant to be submitted to conditional release under Section 9. Thank you. Thank you, counsel. The court will take a short recess. All rise.